UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

_____

DeVilbiss Healthcare LLC,                                    )
                                                             )
                          Plaintiff,                         )
                                v.                           )               ECF Case
                                                             )
React Health Holdings, LLC f.k.a. Cinco                      )
Reals, LLC,                                                  )               Civil Action No. _____
                                                             )
                          Defendant.                         )
_____)

Plaintiff DeVilbiss Healthcare LLC ("DeVilbiss") brings the following complaint against

Defendant React Health Holdings, LLC f.k.a. Cinco Reals, LLC ("React Health"), and alleges as

follows:

**NATURE OF COMPLAINT**

1.       DeVilbiss is a world leader in the design, manufacture and distribution of

respiratory medical products, including oxygen, aerosol, suction and, previously, sleep therapy

devices. DeVilbiss sells its products throughout the United States, Canada, Europe, Mexico,

Central and South America, the Middle East, Asia, and Australia.

2.       During the global COVID epidemic, DeVilbiss decided to focus more resources on

the manufacture of respiratory equipment so desperately needed by the population. As a result,

after many years of manufacturing sleep therapy products known as Continuous Positive Airway

Pressure devices ("CPAPs"), in 2022, DeVilbiss sold its CPAP business to defendant, React

Health, formerly Cinco Reals, LLC, pursuant to the terms of an Asset Purchase Agreement

("APA").

3.       As the sale would result in DeVilbiss no longer manufacturing CPAPs, an endeavor

that previously proved to be profitable to DeVilbiss, DeVilbiss only agreed to proceed with the

1

sale because React Health agreed to pay DeVilbiss not only a monetary purchase price payment, but also continuing royalties and commissions on future CPAP devices sold.

4.      In addition, because DeVilbiss's decision to sell its CPAP division occurred while it was still manufacturing CPAPs, DeVilbiss had already ordered, but had yet to receive, certain component parts specific to the manufacturing of its CPAPs at the time of the sale, which it would not be able to use once the sale was complete and it no longer manufactured CPAPs. Therefore, the APA required React Health to purchase those materials at cost from DeVilbiss once received. These component parts are specific to manufacturing the CPAP devices DeVilbiss sold to React Health, and therefore cannot be used for another purpose or sold on any secondary market.

5.      Further, because DeVilbiss had continuing obligations to service warranty claims from prior sales of CPAP devices, DeVilbiss required React Health to manufacture and supply certain CPAP components to DeVilbiss, which would allow DeVilbiss to process and service warranty claims for its customers located outside the United States.  As such, the parties entered into a Supply Agreement under which React Health agreed to supply specific components to DeVilbiss.

6.      React Health has refused to purchase component parts totaling $711,812.00, a specific liability that React Health agreed to pay under the unequivocal language of the parties' APA. Further, React Health has not commenced manufacturing the CPAP devices and, as a result, DeVilbiss has not obtained the full benefit of its bargain in the form of royalties and commissions from the sale of future products. In addition, React Health has failed to supply DeVilbiss with the component parts it agreed to provide under the Supply Agreement, rendering DeVilbiss unable to service warranty claims abroad.

7.     As a result, DeVilbiss brings this action to recover damages it sustained due to React Health's breach of the parties' APA and Supply Agreement.

## PARTIES

8.     DeVilbiss is a Delaware limited liability company with its principal place of business at 100 DeVilbiss Drive, Somerset, PA 15501.

9.     For federal jurisdictional purposes, DeVilbiss is a citizen of Delaware and New York.  The only member of DeVilbiss is DV Holding, LLC.  The only member of DV Holding, LLC, is Medical Depot, Inc.  Medical Depot, Inc., is a Delaware corporation with its principal place of business in New York.  Thus, DV Holding, LLC, is a citizen of Delaware and New York, and in turn DeVilbiss has the same citizenship.

10.    React Health is a Delaware limited liability company with its principal place of business at 203 Avenue A, NW, Winter Haven, FL 33881.

11.    Upon information and belief, Cinco Reals, LLC, the entity that entered into the APA with DeVilbiss, changed its name from Cinco Reals, LLC, to React Health Holdings, LLC, and is doing business as React Health.

12.    Upon information and belief, the members of React Health Holdings LLC are Tom Pontius and Jack Fiedor.  Tom Pontius and Jack Fiedor are citizens of Florida.

## JURISDICTION AND VENUE

13.    This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 because there is complete diversity of citizenship between Plaintiff and Defendant, and the amount in controversy exceeds $75,000.  Diversity of citizenship exists because all members of the Defendant LLC are citizens of Florida, and the sole member of the Plaintiff LLC is a citizen of Delaware and New York.

14.     Personal jurisdiction over Defendant is proper.  Defendant has agreed to submit to the jurisdiction of this Court when it agreed that "any legal suit … arising out of or based upon [the parties' contract] may be instituted in the Federal courts of the United States of America or the courts of the State of New York."  Personal jurisdiction over defendant is further proper because, as alleged below, Defendant has conducted business in the State of New York and this Judicial District and has committed a breach of contract causing harm in this State and Judicial District.

15.     Pursuant to 28 U.S.C. § 1391, venue properly lies in this Judicial District because a substantial part of the events giving rise to the claims herein occurred in this Judicial District and because Defendant has agreed to submit to the personal jurisdiction of appropriate courts located in New York State to adjudicate any lawsuit arising under the parties' contracts.

## FACTS RELEVANT TO ALL COUNTS

**Purchase of the CPAP Manufacturing Business and the Asset Purchase Agreement**

16.     DeVilbiss designs, manufactures and distributes respiratory medical products, including oxygen, aerosol, and suction devices.

17.     Prior to March 2022, DeVilbiss also manufactured and sold sleep therapy devices known as CPAPs.  CPAPs are designed to ameliorate sleep disorders such as apnea by using mild pressure to ensure that airways stay open during sleep.

18.     In or around early 2022, React Health and DeVilbiss entered into negotiations for React Health to acquire DeVilbiss's CPAP manufacturing business.

19.     On or about March 1, 2022, DeVilbiss and React Health executed the APA whereby DeVilbiss transferred the assets of the CPAP manufacturing business from DeVilbiss to React Health.  A true and correct copy of the APA is attached as **Exhibit A**.  An additional Disclosure Schedule related to the APA has not been attached as it contains confidential information.

4

20.     Under the APA, DeVilbiss transferred to React Health all the assets used by

DeVilbiss solely in connection with the CPAP manufacturing business, including component part

inventory, tools and equipment, customer records, and goodwill associated with the CPAP

business, as well specific contracts identified therein.  *See* Ex. A at §2.01.

21.     In exchange for such assets, among other consideration under the APA, React

Health agreed to (a) pay the purchase price of $2,250,000.00; (b) pay DeVilbiss royalties from the

sale of future CPAP devices in the amount of $5.00 per device sold during the Royalty Term,

defined in the APA as the period beginning on the Closing Date and ending on the third (3rd)

anniversary of the Closing Date; (c) pay DeVilbiss commissions from the sale to certain customers

of future CPAP devices in the amount of five percent of React Health's net receipts from such

customers, and (d) assume certain liabilities.[1]   *Id.* at § 2.06(a) and § 2.07(a).

22.     As React Health agreed to buy all component part inventory ordered by DeVilbiss

in connection with the CPAP business but not yet received by DeVilbiss at the time of closing, the

APA provided a corresponding obligation for React Health to pay DeVilbiss for such component

part inventory.  *Id.* at § 2.09.

23.     The APA states, in pertinent part, as follows:

> **Section 2.09 Additional Post-Closing Inventory**. All Inventory, other than
> the Excluded Inventory, that is used in connection with the CPAP Segment
> but not received by Seller prior to the Closing Date and therefore not
> included in the Closing Date Inventory (the "Post-Closing Inventory"), shall
> be sold by Seller to Buyer at cost. Upon receipt of the Post-Closing
> Inventory, Seller shall notify Buyer in writing of such receipt and provide
> Buyer with a copy of the Inventory invoice which shall set forth the quantity
> and price of the Post-Closing Inventory (each, a "Post-Closing Inventory
> Invoice"). Buyer shall, within seven (7) business days of receipt of the Post-
> Closing Inventory Invoice, pay the amount set forth in the Post-Closing
> Inventory Invoice, along with reasonable shipping and insurance costs, to
> Seller by wire transfer in immediately available funds to an account
> designated in writing by Seller within two (2) business days thereafter

---

[1] Unless otherwise stated herein, capitalized terms shall be afforded the meaning ascribed in the APA.

(each, an "Additional Inventory Payment"). Within two (2) business days of receipt of the Additional Inventory Payment, Seller shall ship the Post-Closing Inventory to Buyer in accordance with written instructions provided by Buyer.

24.     Among the liabilities assumed by React Health under the APA were the amounts due and owing from DeVilbiss to certain suppliers, including Sager Electronics ("Sager") and CAMRPC Electronics ("CAMRPC").

25.     Under the APA, the parties agreed that the APA will be governed by the laws of the State of New York.  *Id.* at § 8.10(a).  The parties further agreed that each party "irrevocably submits to the exclusive jurisdiction" of the state and federal courts located in the State of New York.  *Id.* at § 8.10(b).  Finally, under the APA, the parties waived any objection to venue in the state and federal courts located in the State of New York for any litigation that should arise under the APA.  *Id.*

**Breach of the APA**

26.     Prior to the closing under the APA, DeVilbiss executed the following purchase orders at issue in this case: an order with CAMRPC for $413,162.00, and an order with Sager for $289,650.00, for a total of $711,812.00 (the "Outstanding Payables").

27.      In accordance with the APA, DeVilbiss demanded that React Health pay the Outstanding Payables.

28.     React Health refused to pay the Outstanding Payables.

29.     Despite the unequivocal language of Sections 2.01(b) (assigned contracts) and Section 2.09 (Additional post-closing inventory) of the APA, React Health has refused payment, taking the untenable position that the Outstanding Payables were not disclosed to React Health during the due diligence prior to React Health's acquisition of the CPAP division on the list setting forth outstanding payables.

6

30.     Notably, no representations or warranties were made by DeVilbiss concerning the list of outstanding payables. In fact, this list was not included in the APA or any schedule thereto. Instead, React Health simply agreed to pay all outstanding payables for product ordered that had yet to be supplied to DeVilbiss.

31.     These Outstanding Payables are covered under §§ 2.01(b) and 2.09 of the APA.

32.     The APA is an integrated document that states in relevant part that, with the exception of certain documents referenced therein, it constitutes "the sole and entire agreement of the parties to this Agreement with respect to the subject matter contained herein and therein, and supersede all prior and contemporaneous representations, warranties, understandings, and agreements, both written and oral, with respect to such subject matter." See §8.06 of the APA.

33.     Grasping for any excuse to avoid its obligations under the APA, React Health also takes the position that it is somehow not liable for the Outstanding Payables because such amount is excessive when juxtaposed against the purchase price under the APA. Such argument lacks merit on its face, but especially given that the total consideration under the APA included the purchase price, the assumption of the subject liability, as well as royalties and commissions on future sales.

34.     Fatal to all the purported defenses raised by React Health is that in February of 2023, React Health entered into negotiations with Sager in an attempt to convince Sager to take less than the full amount owed to it for its outstanding accounts payable of $289,650.00.

35.     Upon information and belief, negotiations between React Health and Sager were unsuccessful.

36.     Upon information and belief, React Health also entered into negotiations with CAMRPC in an attempt to convince CAMRPC to take less than the full amount owed to it for its outstanding accounts payable of $413,162.00.

7

37.     Upon information and belief, negotiations between React Health and CAMRPC were unsuccessful.

38.     As a result of React Health's failure to renegotiate the Outstanding Payables, React Health changed its strategy to deny all liability and avoid its obligations under the APA.

39.     In addition to its breach of the APA for failure to pay the Outstanding Payables, React Health never manufactured any CPAP devices.

40.     Because of this, DeVilbiss has been deprived of the royalties and commissions to which DeVilbiss is entitled under the APA.

41.     React Health's breach of the APA has caused and is continuing to cause harm to DeVilbiss.

**Supply Agreement**

42.     As part of the APA negotiations, DeVilbiss agreed to continue to service outstanding warranties to customers abroad, whereas React Health agreed to service domestic warranty claims.

43.     To ensure that DeVilbiss would have access to the parts necessary to service the outstanding warranties to its customers abroad, on October 19, 2022, DeVilbiss entered into the Supply Agreement with React Health, whereby React Health was obligated to manufacture parts needed by DeVilbiss to fulfill its warranty obligations ("Products").  A true and correct copy of the Supply Agreement is attached as **Exhibit B**.

44.     The Supply Agreement provides that "Supplier [or, React Health] **shall** manufacture and deliver to Purchaser [or, DeVilbiss] the Products." Ex. B, Section 1.1 (emphasis added).

45.     The Supply Agreement goes on to identify eighty-two (82) products to be supplied to DeVilbiss.

46.     The Supply Agreement further provides that "[DeVilbiss] shall place orders for the Products, from time-to-time, by issuing orders and [React Health] **shall accept** purchase orders that comply with the terms and conditions of this Agreement."  Ex. B at 2.1 (emphasis added).

47.     The Supply Agreement further specifies that "[DeVilbiss] **shall deliver** the Products in the quantities and on the date(s) specified in Annex A or as otherwise agreed in writing by the parties (the "Delivery Date").  **Timely delivery of the Products is of the essence.  Supplier agrees to utilize reasonable efforts to ensure timely delivery of the Products.**"  *Id.* at 2.2 (emphasis added).

48.     Under the Supply Agreement, the parties agreed that the Supply Agreement will be governed by the laws of the State of New York.  *Id.* at 23.  The parties further agreed that any litigation arising under the Supply Agreement would only be filed in the United States District Court for the Eastern District of New York or the courts of the State of New York sitting in Nassau County.  *Id.* at 24.

**Breach of the Supply Agreement**

49.     Despite agreeing to supply 82 products under the Supply Agreement, to date, React Health has only supplied two of the 82 products.

50.     React Health has never supplied DeVilbiss with any of the other products required by the Supply Agreement.

51.     Because of React Health's failure to supply the products required by the Supply Agreement, DeVilbiss has been unable to fulfill its obligations related to outstanding warranty

9

claims by its foreign customers for CPAP devices that were manufactured before React Health acquired the CPAP Segment.

52.     React Health's breach of the Supply Agreement has caused and is continuing to cause harm to DeVilbiss.

53.     Before executing the APA, the parties anticipated that DeVilbiss would service the warranty claims for DeVilbiss's former European customers, to maintain customer goodwill and to ensure that those customers would continue to purchase CPAP devices from React Health after the execution of the APA.

54.     By failing to supply these warranty parts, React Health is preventing DeVilbiss from servicing these warranties, which substantially ensures that these customers will no longer purchase CPAP devices from React Health in the future.

55.     This, in turn, has and will continue to deprive DeVilbiss of royalties and commissions to which DeVilbiss is entitled under the APA.

### COUNT ONE
### (Breach of Contract)
### (Asset Purchase Agreement)

56.     DeVilbiss incorporates by reference the allegations above as if fully stated here.

57.     React Health entered into a binding contract with DeVilbiss; namely, the APA.

58.     DeVilbiss performed all its obligations under the APA.

59.     React Health's actions and inactions breached its obligations under the APA.

60.     React Health is in default of its obligations to DeVilbiss under the APA.

61.     As a result of React Health's breaches, DeVilbiss has been and continues to be damaged, in the principal amount of $711,812.00 plus interest, fees and costs.

62.     Pursuant to Section 8.11 of the APA, DeVilbiss is also entitled to reasonable attorneys' fees, costs and necessary disbursements, in addition to any other relief to which it may be entitled.

**COUNT TWO**
**(Breach of the Covenant of Good Faith and Fair Dealing)**
**(Asset Purchase Agreement)**

63.     DeVilbiss incorporates by reference the allegations above as if fully stated here.

64.     New York law implies a covenant of good faith and fair dealing in all contracts, including the APA.

65.     The covenant requires that each party to a contract act in good faith in performing its obligations under the contract and deal fairly with the other parties to the contract. The covenant of good faith and fair dealing protects the bargained-for terms of the agreement.

66.     Actions taken in bad faith or with an improper motive to destroy or injure the right of the other party to receive the benefits or reasonable expectations of the contract will breach the implied covenant.

67.     React Health's failure to manufacture and sell CPAP devices constitutes a breach of the covenant of good faith and fair dealing imputed into the APA as it deprives DeVilbiss of the royalties and commissions it bargained for thereunder.

68.     As a result of React Health's Breaches, DeVilbiss was and will continue to be damaged.

**COUNT THREE**
**(Unjust Enrichment)**
**(Asset Purchase Agreement)**

69.     DeVilbiss incorporates by reference the allegations above as if fully stated here.

70.     React Health has been enriched by the foregoing conduct, including but not limited to its retention of the benefits of the APA while disclaiming the liabilities transferred to it under the APA.

71.     React Health has not compensated DeVilbiss for payment of $711,812.00 to CAMRPC and Sager for inventory covered under § 2.09 of the APA and assigned contracts covered under §2.01 of the APA.

72.     Accordingly, React Health has been unjustly enriched because of the foregoing conduct.

73.     React Health's enrichment to the detriment of DeVilbiss is contrary to the law and without justification, and it would be improper and unjust to allow React Health to retain the benefits gained at the expense of DeVilbiss.

74.     As a result, DeVilbiss has been damaged.

## COUNT FOUR
### (Breach of Contract)
### (Supply Agreement)

75.     DeVilbiss incorporates by reference the allegations above as if fully stated here.

76.     React Health entered into a binding contract with DeVilbiss; namely, the Supply Agreement.

77.     DeVilbiss performed all its obligations under the Supply Agreement.

78.     React Health's actions and inactions breached its obligations under the Supply Agreement.

79.     React Health is in default of its obligations to DeVilbiss under the Supply Agreement.

80.     As a result of React Health's breaches, DeVilbiss has been and continues to be damaged by loss of customer goodwill and business reputation, and by loss of royalties and commissions to which DeVilbiss is entitled under the APA.

81.     In addition to the monetary and non-monetary principal amounts due DeVilbiss under the APA, DeVilbiss is also damaged as a result of React Health's breach in amounts which include any taxes which may be owed on amounts React Health is ordered to pay DeVilbiss; for pre- and post-judgment interest; for DeVilbiss's attorneys' fees and costs of suit; and for such other costs and fees as may arise from React Health's breaches.

## COUNT FIVE
### (Breach of the Covenant of Good Faith and Fair Dealing)
### (Supply Agreement)

82.     DeVilbiss incorporates by reference the allegations above as if fully stated here.

83.     New York law implies a covenant of good faith and fair dealing in all contracts, including the Supply Agreement.

84.     The covenant requires that each party to a contract act in good faith in performing its obligations under the contract and deal fairly with the other parties to the contract. The covenant of good faith and fair dealing protects the bargained-for terms of the agreement.

85.     Actions taken in bad faith or with an improper motive to destroy or injure the right of the other party to receive the benefits or reasonable expectations of the contract will breach the implied covenant.

86.     Under the Supply Agreement, React Health agreed to supply DeVilbiss with 82 different products.  React Health has not manufactured 80 of those 82 products.

87.     React Health had an obligation under New York law not to agree to terms which React Health never intended to fulfill.

13

88.     The above-referenced actions by React Health, among other actions, breached the covenant of good faith and fair dealing implied in the Supply Agreement.

89.     As a result of React Health's Breaches, DeVilbiss was and will continue to be damaged.

## COUNT SIX
### (Unjust Enrichment)
### (Supply Agreement)

90.     DeVilbiss incorporates by reference the allegations above as if fully stated here.

91.     React Health has been enriched by the foregoing conduct.

92.     React Health has not compensated DeVilbiss for the unjust gains that React Health has made as a result of React Health's unlawful conduct.

93.     Accordingly, React Health has been unjustly enriched as a result of the foregoing conduct.

94.     React Health's enrichment to the detriment of DeVilbiss is contrary to the law and without justification, and it would be improper and unjust to allow React Health to retain the benefits gained at the expense of DeVilbiss.

95.     As a result, DeVilbiss has been damaged.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff DeVilbiss requests that this Court enter judgment against Defendant React Health, and in favor of DeVilbiss, as follows:

A.     Entering judgment against React Health and in favor of DeVilbiss on each and every cause of action herein;

B.     Entering an award of compensatory damages in an amount to be determined at trial but in no event less than $711,812.00 as paid to CAMRPC and Sager for ordered inventory;

C.      Entering judgment against React Health and in favor of DeVilbiss in such additional amounts as are necessary to compensate for React Health's failure to pay royalties and commissions, as per §§ 2.06 and 2.07 of the APA;

D.      Entering judgment against React Health and in favor of DeVilbiss in such additional amounts as are necessary to compensate for React Health's failure to deliver products under the Supply Agreement, and to prevent any unjust enrichment thereby;

E.      Entering judgment against React Health and in favor of DeVilbiss for pre-judgment and post-judgment interest, and the costs and attorneys' fees associated with bringing this action; and

F.      Granting such other relief as the Court deems just and proper.


Dated: November 6, 2023

**NORRIS, McLAUGHLIN, P.A.**
*Attorneys for Plaintiff, DeVilbiss Healthcare LLC*

By: _/s/ Danielle DeFilippis_____
        Danielle DeFilippis
        Melissa A. Pena

7 Times Square, 21st Floor
New York, NY 10036
Tel: (212) 808-0700
Email: dmdefilippis@norris-law.com
            mapena@norris-law.com

15